For argument not to exceed 15 minutes per side, Mr. David Hardesty for the appellant. Good morning. May it please the court, I'm David Hardesty from Gold Star Law on behalf of the appellant Michael Keller. I'm reserving five minutes for rebuttal. This is an appeal from the district court's grant of summary judgment, finding that the plaintiff, Michael Keller, was an independent contractor of the defendant, Miri Microsystems, and not an employee within the scope and protection of the Fair Labor Standards Act. It's an action for overtime compensation. In deciding this case, some principles which we submit were not kept in mind sufficiently by the district court. One is that the term employee must be defined broadly in accord with the remedial purposes of the FMLA. The Supreme Court has defined it as being broader than any of the common law definitions of employee that we're familiar with. And the purpose for that broad definition is demonstrated in this case. It's to protect a worker from working extraordinary long hours in a week without being compensated at a premium rate. And to prevent the employer from evading the overtime requirements of the act by the simple expedient of designating the person as being an independent contractor. We submit also that the district court relied, although not expressly, on the same erroneous understanding of the economic reality test as was advanced by Miri in its brief. Essentially, that economic dependence is but a factor in determining whether an individual is an employee for purposes. Do you agree that we should use that six-factor test as the focus of our analysis? No, Your Honor. I believe that you should use those six factors as tools or aids in determining the ultimate and complete question, which is, whether the individual is economically dependent on the business of the employing party. Why didn't the facts show that he was dependent on this employer when, as I understand, we don't have controverted facts? He could work for anybody he wanted to and did work for others. He could work on his own and did work on his own. How do you even meet the basic test, let alone the six-part test? In this way, Your Honor. He testified that he worked six days a week from early in the morning until late in the evening for Miri. That didn't leave any time to work anyplace else. Well, there is evidence he did work. And here is the evidence. He installed two dishes for friends of his without any evidence of profit. He, for a short time, would install routers, which is a piece that goes between the dish and the computer. His testimony was, and I quote, very few of these routers. And he was able to make $25 to $35 for each of these very few. Over a course of 20 months, Your Honor, that is virtually indistinguishable from exclusively working for Miri. And he didn't have time to work for anyone else. Now, there is no case law that says you have to be limited contractually from working for someone else to have that sort of independence. There is nothing that prevents me from working outside my law firm, as long as it is not in the law, except for the fact that with 90 hours a week, I don't have a lot of time to do that. So are you suggesting, obviously you're suggesting that the district judge erred in granting summary judgment, but are you suggesting that there is a genuine issue of material fact that should be tried to the trier of fact as to whether or not your client was an employee? Yes. Yes, Your Honor, I am. And I believe that if we look at the six factors, the tools or aids, they give us some notion of that. For instance, the district court found that permanence, the permanence factor, weighed in favor of independent contract status. This person worked for 20 months, six days per week. His employment was not restricted to a particular project. You do this project and it's over, the way many independent contractors are. He was there until he quit or until he terminated, which is exactly the situation of every employee who works on an at-will basis. There are a bunch of cases, many from the district courts, involving people who are in the satellite dish cable TV installation area. What would you say is the most analogous case or the best case that we should look to for a parallel to this one? Heaton v. Time Warner, Your Honor, which is a Southern District of Ohio case. I think that's probably the most analogous. The difficulty with the cable installer cases, first of all, many of them are not satellite. They seem to be more intricate sort of cable, which requires electrical skill. For instance, the Chow case, the Dole v. Maryland case. Those are cited for the proposition that this cable installer has a degree of skill that makes him an independent contractor. Both of them relied on an assumption that is nowhere supported in the opinion that carpenters and electricians and construction workers generally are independent contractors. I don't know how things are like in Florida or Georgia where these cases come from, but in Michigan, there's a very large electrician's union and a very large carpenter's union and a very large laborer's union. There are huge numbers of people that do this kind of work. They're employees for either union contractors or non-union contractors. The kind of skills that he had, the kind of carpentry skills that, okay, not very well, but that I have. He used the kind of tools that any homeowner has, screwdriver, hammer. But the point is, if you take that notion of skills and look at it in terms of, is he dependent upon Meary or is he operating his own business? He can't go out there and start his own cable installing company. He has to work through one of these companies that has contracts with the ultimate provider, HughesNet, in this instance. I found this case a little hard to get a handle on. The six factors are not real easy to work with, and I kept trying to get my perspective on what the essence of this case is. Of course, part of the problem is when you're dealing with single factors, the search for essence doesn't leave too much room for consideration of all the factors. But it seemed to me that what we had here is a situation where Meary was trying to give the relationship some of the indicia of an independent contractor relationship. And certainly, he was free to do work for others and all those things. But in reality, in order to work with Meary, he had to function in a way that was more like an employee than an independent contractor. Because otherwise, there's just no way he could do their work and their bidding. Is that kind of a... Your Honor, I'd like you to write my next brief for me. That is the essence. So how do you take that essence and fit it in, taking it from kind of the big picture? Which factors does that go to, and how do we fit it, even accepting that the factors are not a test in the sense that you must find A, B, C, and D? But how do you fit it within those factors? Well, Your Honor, I think that's an excellent question because it's something that many courts have ignored, and they tend to look at the trees instead of the forest. What those factors have to do is prove or disprove economic dependence. That's the ultimate question. And so each of those factors needs to be examined in terms of Does it tend to show that the person was economically dependent on the hiring party's business or operating a separate business? Well, yeah, but, you know, even an independent contractor can certainly be very dependent on a single entity or individual with whom that contractor contracts. I mean, I understand that that language is there, but it still doesn't give the whole story always. No, it doesn't. That's my time. Thank you. Thank you, Your Honor. Good morning. Good morning. Aaron Graves on behalf of Defendant Muir Microsystem. On the way over here in the cold and snow, I was thinking about the best way to explain my position and Mr. Keller's position on this case and the way that it should be analyzed. And I came up with a flow chart, which doesn't necessarily work that great for oral argument, but give me a shot on this. So we have the FLSA test. It's an economic realities test. The Sixth Circuit has determined that there are six factors. Underneath that, what you have is you're in your own business or you're dependent. If you're dependent, you're an employee. If you're in your own business, you're an independent contractor. Each of those six factors inherently goes to one side or the other. So for permanence, if you have more permanence, that factor goes to dependence. It makes sense. If you are less skilled, that factor goes to dependence, employment status. But on each of these, there are variations and gradations. So to say it goes to one or goes to the other, it may be right in the middle, that there are some aspects of skills and other aspects that show less skilled. And so it could be that it's an indeterminate factor. And just hypothetically, let's suppose that either there's a 3-in-3 or there's some ambiguity or uncertainty. Why shouldn't the trier of fact decide this as opposed to a summary judgment? I think that if there is ambiguity, then it would go to the trier of fact. And we have cases like that, Ivar's case and so forth, that would say that. Correct. And in this case, Judge Edmonds made an exhaustive review of all the facts. She looked at each one of the elements, and she decided which way they went. And she determined that, number one, there weren't any issues of material fact. Appellant indicates that there are issues of material fact, but really hasn't raised any. And she looked at each issue. The fact is that when you're looking at all these factors, it's a loose formulation. Donovan decided that. You have to do a case-by-case analysis, and then you look at the totality of the circumstances. But given all of that, and given that it's summary judgment, and then we look at things in the light most favorable to the opponent of summary judgment, if there are ambiguities as to how we, like let's say tools and skills. He uses a lot of tools that an average person would have in their basement. So maybe that shows that he's an employee. Is that right? His skills, he's gotten this one-day training and certification. Does that show he's highly skilled? For most people, you'd say one day. It happens if you're going to be some kind of barber. You have to go to barber school for a while. So it seems to me that given the summary judgment standard and given ambiguity, that maybe this is something that should go to a trier of fact. Well, I would disagree, and the reason why is because we have a lot of case law on these issues. And the case law comes down, and if you look at the cases that I cited in my briefs, consistently they came down on our side that summary judgment is appropriate when you had parallel facts. Well, what about the opinion in Keaton versus Ty Morner? I think that the overwhelming majority of the other cases come down on our case. Okay, but that case doesn't come down your way. I believe that's correct. So what's wrong with that case? I can't speak to that right now. Can I go back to sort of the paradigm that I was asking Mr. Hardesty about and ask you a question that's kind of related to that? This work that Mr. Keller was performing on behalf of Mary, it's hard to conceive that he really had much choice about how to go about it. I mean, if he had chosen to work substantially less or not to have accepted jobs because he had other opportunities that were more lucrative, are you in a position to tell us that the record suggests that he would have continued to be used as an installer by Mary if they hadn't been able to count on him to basically take 100 percent of the jobs that were sent his way? Well, absolutely, because he made the decision as to where he wanted to work. He said, I want to do, I think it was two installations per day or four installations a day. It was up to him. He could decline them at any time. He could reschedule them at any time. What would have happened to his relationship with Mary? Mary would have contracted with another installer to do those extra installs. Is there evidence in the record to support that? No, but there is record in the evidence because it wasn't an issue. It would seem to be a really pertinent issue whether there was realistically some other avenue available to him, some way to run this other than as more than a full-time job on behalf of Mary, whether he was doing it as an employee or an independent contractor. It seems to me one would suggest, particularly when one adds in the email message, which admittedly was on a performance issue rather than, you know, it seems to me you can put that together and the record might tend to suggest that Mary would have said goodbye. If all the jobs had not been performed exactly as Mary wished and if he had not taken all the work. Well, one, it was as HughesNet wished the jobs to be done. Well, Mary is here in this lawsuit. I understand. And then he could have done – there is evidence to an extent because one of the other contractors that Mary worked with was ABC, which Mr. Keller worked for prior to – or did installations for prior to doing installations for Mary. Keller very simply could have said – could have used – he hired a helper to – and he paid him $10 an hour to do the jobs and he had his wife working with him to do the jobs. He simply could have utilized those sources. He admitted that he could have used other installers to do those installations. There is little question but that he had to – that his work was controlled in a very precise way with respect to the paperwork and so forth that he had to fill out. Well, the paperwork that he had to fill out – Well, I mean, is that right or not right? Well, I would – the paperwork that he had to fill out, there were specific forms that had to be filled out and submitted to HughesNet so that they could get paid for the jobs. However, how he performed the job, any of those details – I mean, he's going to a home and he's got to assess the situation and decide how to perform this installation. Why does that make somebody an independent contractor rather than an employee? Because he has to exercise a great deal of discretion. But what do you think – I mean, if you call up to have your telephone repaired, you know, using a model of we all have landlines or something, I mean, you don't expect you're calling an independent contractor. You expect you're calling – if you've got Comcast out working on your cable, you think you're having a Comcast employee come and they have all the discretion in the world to do the job or not do the job, as the case may be, or to do it badly. Well, I – I'm surprised you're not arguing lack of control. There's no evidence that I saw that your client supervises this person on the job. Why aren't you arguing control? In common law, they're dead, aren't they? And I realize this isn't common law. But that's strange that you're not arguing – to me it's strange. Well, I am arguing that. I mean, there was no exercise of control by Murray over, you know, how he did the job. Isn't there control subsequently, though, that if there's a complaint about how he did it, he would be sent out to fix it or he would be told, you do that again and you'll be fired? He was never told that if you don't do that again, you're going to be fired. Were there any complaints about it? There was a complaint that there was an oil leak in a driveway and he was asked to go fix it and he refused to fix it. And so Murray went and took care of it himself. And he wasn't fired for that. So as far as the control issue goes, no one ever went and supervised him when he went out on the job to install a satellite dish. And getting back to your question, Your Honor, the issue of how you did an install, it's not the same as plugging in a telephone line. We're putting a satellite dish on a roof or on a separate structure. You have to decide whether or not you're going to do that. You've got to decide how you're going to run the wire. You've got to decide where you're going to run the wire into the house and how it's going to be monitored. You're talking about setting up the person on the person's computer. I don't see how that sort of discretion is materially different from the sort of discretion that employees exercise on behalf of their employer every day. But there is, I mean, you're talking about... That's not a degree of discretion that's foreign to the employee-employer context either. Well, I would think that typically in an employee-employer context there would be supervision or monitoring of how that job is actually performed. So within the employer-employee context, it all depends on the degree of discretion that's granted to the employee, the degree of skill the employee has, all kinds of things, whether the employee is working on-site where he's amenable to supervision or off-site. I mean, it's just not inherently inconsistent, I don't think. Let me ask you one other thing. This is an odd area of the law. I mean, on the one hand, we're told that the resolution of this question is a question of law, but yet we're also told that if it's close, we're supposed to let a jury decide it. Do you agree that we are in that sort of anomalous situation? If you're asking me whether I think it's a close situation, I don't. No, no, I'm not. Do you agree that that's the legal paradigm with which we're working? Yes, I do. Thank you. Well, I do want to bring out just a couple more points since I do have more time. Judge Edmonds recognized the economic dependence theory that Keller is arguing here, and that's on page 9 of her decision and in footnote 3 on page 9. When she addressed that, I think that it's clear that she performed the analysis by making a determination on each factor. Her factual analysis of the case was exhaustive in that she didn't go through on each different element and say, well, this one is dependence. That's not error because she did look at each factor. Finally, an economic dependence argument, even if it was applied in this case, clearly shows that he wasn't economically dependent. He was not economically dependent. So he works six days a week essentially only for Mary with these occasional things for friends. Well, it wasn't necessarily for friends based on the record. It was he went in and sold routers to people. He purchased the routers on his own. These are wireless Internet routers that go into homes, and then he would charge the people for the routers, and then he would charge the people for the installation costs. Did the record show how much time he spent doing that? He didn't have any records of any time, which goes to one of my other arguments as far as why summary judgment is appropriate. He did say that he worked very long days, six days a week, for Mary. He said he went out early in the morning and didn't come home until late at night, but he has no records of what he was doing that time. He made a significant amount of money, $900 over that period of time at least. That's at least what he admits to doing installations and other work for people. Is there any evidence that your client required him to work those hours? No. He asked for that number of assignments. Because of the amount that he was paid per assignment. It was given that he had to drive very long distances using his own vehicle, using his own tools, that you would schedule, tell me where I'm wrong, that you would schedule his jobs. So he'd be at one part of one county and then another part of another county. He had large expenses in terms of driving, and in the end you didn't reimburse his gas. In the end that goes to opportunity for profit or loss. It's not me to judge, but to me I think he made very poor business decisions. He decided, I'm going to take over this huge geographic area, so I'm going to have to drive back and forth. I want to do this many jobs. So he should have taken fewer jobs is your theory. My theory would be that you would go to a higher density population and choose that area where you didn't have to drive as much and you spent more time doing the job. Didn't Mary want to have somebody doing the jobs in this rural area? I'm sorry, I don't know Michigan that well, but this area where he had to drive long distances. I'm a little bit lost about what the end point of your... The end point is that we get an order from HughesNet and then we want to fulfill that order. So we find an installer that's willing to do it. Mary offered to do it. He chose to do it. We have that in writing. He selected where he wanted to do the jobs, how many jobs he wanted to do. So if somebody chooses to do something, they can't be an employee? Not necessarily, but that goes to one of the factors. That goes to the one, opportunity for profit or loss, and number two, control. He controlled where he did the jobs and how he did them. So in my opinion, he was running his own show, and that's why he's an independent contractor. Your red light is on, so thank you very much. Thank you. This is eight, but I think it should be five. Not that I wish to give away, but... You're an honest person. My wife accuses me of that, too. Your opponent has said he controlled everything. He chose this. He made his bed and he should sleep in it. How would you respond? Your Honor, as we from Michigan use our hand. Yes, the thumb. He's in the thumb, I know. Mr. Keller lived up in the thumb. He lived in a rural area. He chose to work in that area because that's where he lived, and Mary wanted him to work in that area because he was there available. He couldn't go to work in Grand Rapids. He's going to go three hours of commuting each way. That was his area. It's what he had to do. But I suppose that the essence of your opponent's argument is that he controlled. He decided. Here's what happened. The schedule, it was a computer schedule. Most of it was posted directly from Hughes through Mary's system to Mr. Keller. Some calls would come in to Mary and those would be posted. Mr. Keller had to every day pull up on the computer where he was scheduled to be in the morning and in the afternoon. Then he had to drive to those things. Who decided that he'd be in A in the morning and B in the afternoon? Mary or Hughes. That was scheduled. They were the two slots, morning and afternoon. So if it had been scheduled by somebody else inefficiently, he could reschedule with the customer, but in general he was bound to that schedule, correct? Correct, Your Honor. I can choose whether to do a particular task in the morning or the afternoon. It doesn't really change the nature of my employment. Judge Norris, the amount of control, and I understand your question about that. I believe that you'll see that the record does show that there was substantial control. For instance, when to do the job was essentially determined by Mary. The procedures for how the job had to be done were dictated by Mary, ultimately by Hughes but through Mary. He was required to submit photos of all the facets of the work and they had to be approved before he would get paid. He had to call in upon arrival and upon departure. There may not have been someone there personally supervising him, but he was very much under supervision. Is there evidence that the employer could require him not to work more than eight hours a day? No, Your Honor. It never came up. Under the FLSA, the employer is liable regardless of whether he requires the person to work as long as he suffers the person to work. That's how the language of the statute is, if he's aware that he's working that much. But Mary was aware of what his schedule was, where these places were, how much he had to drive, how much paperwork he had to do, all of that. So there's no issue that they were aware that he was working more than that. Finally, whether Mr. Keller could have opened a business by hiring other people? First of all, there's no evidence that there was more work in the area where he worked than what he was doing. But also, the evidence is that he had worked for a brief time for ABC, which was a subcontractor of Mary. And Mr. Mary, the sole shareholder of the defendant, testified that ABC was paid a higher rate than Mr. Keller was. Mr. Keller was paid the same amount when he worked for ABC as when he worked for Mary. It doesn't leave room to hire somebody else as a full-time worker and turn a profit. Finally, I think Judge Moore's point is very well taken. This is summary judgment. And I submit that, at the very least, there are factual issues that are presented in the record. Thank you, Your Honor. Thank you. Thank you both for your argument. The case will be submitted. Would the Court call any remaining cases? The remaining cases are 14-2091, United States of America v. Washington, D.C. 13-2029, United States of America v. Washington, D.C. and 14-3291, Harlan Chen v. Eric Holder, Jr., cases released within ethics.  Would you adjourn the Court?